W. K. WILCOXON *vs.* B. C. CALLOWAY and P. M. CALVERT.

In an executory contract for the sale of land, the payment of the purchase money constitutes the vendee the owner in Equity, and he has a right to a conveyance from every person having the legal title with notice of his claim;

Therefore, where a person contracted to buy two tracts of land, represented in the description to contain one hundred acres, when, in fact, there were only sixty-six acres, and paid three fourths of the purchase money, and the vendor afterwards sold the same land to a third person, who had notice of the previous contract, and became insolvent; *it was held*, that a deficiency of one-third of the number of acres was a material matter, and that the purchaser was entitled against the vendor, and those claiming under him, with notice, to a conveyance and an abatement of the price.

It is not a general rule that the abatement shall be in the proportion of the deficient quantity to the quantity purchased. Improvements, natural advantages, &c., are to be considered. In such cases the only mode of estimating the abatement is by a reference, to ascertain how much more was given by reason of the supposed additional quantity.

[*Ward* v. *Ledbetter*, 1 Dev. & Bat. Eq. 496; *Gentry* v. *Hamilton*, 3 Ire. Eq. 299; *Jacobs* v. *Love*, 2 Ire. Eq. 286; *Leigh* v. *Crump*, 1 Ire. Eq. 299, cited and approved.]

CIVIL ACTION tried before *Mitchell, J.*, at Spring Term, 1872, of WILKES Superior Court.

The plaintiff complained, that the defendant Calvert contracted to sell him, for the sum of $200, two tracts of land, each containing fifty acres. That at the time of the trade he paid defendant one hundred and fifty dollars, and the bargain was that the land should be run out, and if there were one hundred acres plaintiff was to pay $50 more; if there was a deficiency it was to be deducted from the price paid; if an excess he was to pay for the excess at the rate of $2 per acre. That the land was surveyed according to the contract and there were only sixty-six acres. That thereupon defendant applied to

Calloway who owned worthless lands adjacent to the land sold, and bought of him enough to make up the 100 acres, had it run out with the land sold, but plaintiff refused to receive it, and demanded title of Calvert for the sixty-six acres, and that he should refund what he had paid over the price of the 66 acres, at $2 per acre. That Calloway, with a full knowledge of these facts, purchased the 66 acres, and had taken a deed for the same.

Complaint asked that Calloway be declared a trustee of the legal title for plaintiff, and be compelled to convey the same to him, and that plaintiff have judgment against Calvert for the excess of the price which he had paid.

Calloway alone answered, and judgment was taken against Calvert for want of answer, he having left the State and been brought in by advertisement.

Plaintiff offered in evidence a written contract between Calvert and himself, and then offered to prove, that before the written contract was signed by Calvert, it was agreed between them that the lands were to be run out, and if 100 acres plaintiff was to pay $200 ; if there was a deficiency it was to be deducted from the price at the rate of $2 per acre ; if an excess to be added at the same rate. Defendants' counsel objected to this testimony, but it was admitted by the Court. Defendants excepted. Plaintiff offered to prove that the contract, as proved by the witness, was made both before and after the signature of the written agreement. This was objected to, but admitted by the Court. The material portion of the written contract is set forth in the opinion of the Court. Verdict for the plaintiff.

The Court rendered judgment according to the prayer of the complaint. Defendants appealed.

*Folk*, for the plaintiff.
*Armfield*, for the defendants.

RODMAN, J. On the 13th January, 1868, the defendant

Calvert agreed to convey to plaintiff a good title in fee to "all that certain piece or parcel of land known as the Turkey Pen tracts, two separate parcels or tracts, fifty acres each, entei ed, one by Neal and William Calvert, Sr., and the other by William Calvert and son Neal, these tracts lying and joining B. C. Calloway at this date," on 1st April, 1868, provided that by that date the plaintiff should have paid Calvert $200, or its equivalent. It appears that at the execution of this contract the plaintiff paid the defendant Calvert $150 on the contract. The land was afterwards run out and found to contain but 66 acres. Afterwards Calvert sold the land to Calloway for value, but (as is not denied, and it is therefore assumed to be true) with notice of the previous contract with plaintiff.

As Calloway bought with notice, he stands in the shoes of Calvert so far as respects his liablility to convey the land. We think the judgment of the Court below to that effect was right. *Ward* v. *Ledbetter*, 1 D. & B. Eq., 496.

The next question then is, is the plaintiff entitled to compensation for the deficiency in the quantity, and by what rule is that compensation to be ascertained?

The land is described in the contract as two tracts of fifty acres each, but run out only sixty-six acres in all. Both parties seem to have had equal opportunity of knowing the quantity of the land, and were equally ignorant of it. There are no allegations of fraud or wilful deception. It is a case of mutual mistake. But upon a contract for a hundred acres, even though there is no suggestion that the vendee, for any reason, desired exactly that quantity, or that quantity was of any value except as *quantity*, yet a deficiency of one-third must be held material, and would probably entitle the vendee to rescind the contract if he chose to do so, or at all events, to an abatement of the price. In *Gentry* v. *Hamilton*, 3 Ire. Eq. 376, there was a deficiency of 355 acres out of a tract described as containing "1,670 acres, more or less." In *Leigh*

30

v. *Crump,* 1 Ire. Eq. 299, the land was described as containing 1,000 acres, more or less, and it contained in fact only 600. In both those cases the purchaser was held entitled to an abatement. See also *Jacobs* v. *Locke,* 2 Ire. Eq. 286, and Fry Spec. Perfor. 191, 248, S. 801, Hilliard Vend. 331, 273, 277, 328. In this case, the vendor having received payment of three-fourths of the purchase money, and being insolvent, the purchaser is clearly entitled against him, and against a purchaser from him, with notice to have a conveyance with an abatement of the price.

By what rule shall the compensation or abatement be ascertained?

It is not the general rule that the abatement shall be in the proportion of the deficient quantity to the quantity represented. Such a rule would in many cases be plainly unjust. As if the part which the vendor could convey comprised valuable buildings, or mines, or a waterpower, while the part which he could not convey was unimproved or sterile. But this supposes some definite piece of land to which the vendor is unable to make title as was the case in *Jacobs* v. '*Locke ubi sup.* Take the case of a contract to convey a definite tract represented as containing 100 acres which runs out 66 acres only, if there were buildings or other things of value upon the tract, it would not be fair to calculate the value of the deficient acres by an average, obtained by dividing the price agreed to be paid, by the number of acres agreed to be conveyed, because the purchaser has got the land upon which were the things which gave it a peculiar value, and would not have got them over again had the quantity held out as represented. In such a case the only mode of estimating the abatement would be by a reference to inquire how much more was given for the land by reason of the supposed additional quantity. *Hill* v. *Buckley,* 17 Ves. 394. In this case, however, it does not appear that any part of the land has been improved, or that there is anything to give any one part of it extraordinary value over any other part, and

we do not see why it will not be fair and reasonable to esti-
mate the value of the deficiency at the average price per acre.
That was the course which seems to have been adopted in the
Court below, and no especial exception has been taken to it
here.

In this opinion no allusion has been made to the evidence of
a parol variation of the contract, because, if admissible, it would
not have varied the conclusion we have come to.

PER CURIAM.                    Judgment affirmed.